Your Honor, the second case on the docket is Sued at 820930 Robert J. Holden v. Christine Holden v. Clemmons, P.S. v. Wilson Management, LLC, Limited Liability Company, Defendant Appellee. Arguing on behalf of Defendant Appellee, Mr. Stephen A. Berman. Arguing on behalf of Clemmons, P.S. Mr. Berman, you may proceed. Mr. Berman, on behalf of the Plaintiff Appellant. Good morning, Your Honors. May it please the Court. I'm not here to argue the substance of the case. I'm here to argue that the motion for summary judgment should not have been granted as there were multiple issues of material theft at issue in the case and contradictions in the record. And that the trial court, in fact, in order to grant the Defendant's motion for summary judgment, made findings that have disputed fact based on inference against the non-moving party, that being the Plaintiff's. Is it personal injury action in which the Plaintiff was severely injured when he was complying with the Defendant's direction to stand on his desk and close the blinds? When you say the Defendant's direction, the defendant, pardon me, the Plaintiff worked for a corporation that was run by your alleged defendant, and then your alleged defendant owned a corporation or owned the property in question and leased it back to himself or his corporation. Is that correct? So how is it in your allegations if the lease provides that the landlord, which is I believe who you're suing, because your client filed a workman's comp claim and was compensated, was he not? So insofar as the Defendant's status as an employer, this wouldn't fly simply because having sought the workman's comp claim, you can't sue in tort, correct? Well, that's correct. So therefore, the only status of the Defendant would be as a landlord and not as an employer? Exactly correct, yes. Okay. And if the lease doesn't indicate that the landlord controls the premises, how is it that the landlord could be liable for failure to exercise a duty which it doesn't have under the lease? Well, we've argued in our briefs that the lease is not clear and free from doubt that in fact the landlord has no control of the premises. In fact, we've argued that it is very unclear and very doubtful in many respects. And that is because when a lease wholly demises a premises to a tenant, that tenant is responsible for the interior of the premises. That is not the case here. The situation in this case is that the owner of the building, the landlord, Wilson Management LLC, is a tenant essentially of that same building. He has his own desk on that same floor that all the other tenants have. And all the other tenants are owned by the same person. What was the alleged breach of duty or the duty and the breach thereof? Was it controlling the way in which blinds are closed? Was it the failure or refusal to allow the desk or the credenza to be moved? Or to allow in a room a small ladder that might be used? What was the landlord's duty that he allegedly breached? Sure. Number one, we argued that the landlord caused the unsafe condition to begin with by setting up the premises and that floor of the building that it owned and leased out to other tenants. It created the condition. How did he cause the condition? He caused the condition by setting up the desk and the furniture and the blinds as it was. And then once that condition... Was there any prohibition towards moving the desk, moving the credenza? I don't think there's any prohibition to moving that. But I don't think the plaintiff had any decision-making power or authority to change that or to move that. That's up to the building owner or landlord. Were these affixed to the floor? Well, they were certainly large desks and credenzas. And the plaintiff... There's a disputed question of fact. In fact, Bob, the owner or the managing partner of this defendant, Wilson of Properties, LLC, absolutely denied placing the desk and credenza there. In fact, the plaintiff did that. The plaintiff turned around and said he had no responsibility for that whatsoever. He wasn't involved in that at all. The plaintiff said he didn't create the condition. In fact, the defendant did. Is there anything in the lease that controls where the furniture is placed? I don't think there's anything in the lease that controls where the furniture is placed, no. But the issue of the lease is that the floor is not wholly demised to one tenant. And I would argue that there are other tenants, not just the plaintiff's employer, Corporate Risk Management, CRM. There are other tenants, which are EmployPro, Carlisle Staffing, and CRM Benefits. They're all owned by the same person, and that's this person, Bob Wilson, which you've always identified as Bob in the record. So he's wearing multiple hats. And when he's wearing multiple hats, the main issue that is on appeal is what hat was he wearing when he gave the direction to the plaintiff? You said that your client testified that the landlord placed the furniture. I thought he testified that Diane Wilson placed the furniture. He did. He testified that the landlord's daughter. Whose daughter? Who's Diane Wilson? His daughter. Bob's daughter. Okay. So, again, where's the evidence in the record that that's the defendant? And she also works at CRM. No. There's no evidence in the record of that. She works for the landlord? The testimony from the plaintiff is. And again, I'm not saying this is clear and definitive. It's not. It's not clear and free from doubt at all. It's the testimony of the plaintiff that the landlord had his daughter, who is an architect, place the furniture. Is there testimony that the landlord placed the furniture in all the offices in that entire building? That question was not asked, and I don't believe that appears in the record specifically, because when that question occurred in the deposition, it was being focused more on the plaintiff's work area and this general area, because that's what was being complained about. Would it make any difference whether or not the lease provided that the landlord would provide furniture or would not provide furniture and that the tenant would provide the furniture? I don't think it would ultimately change the question in this case, because that's only part of the question. Who placed the furniture? We're saying that caused the unsafe condition to begin with. But beyond that, we're saying that the landlord exposed the plaintiff to the hazard by directing him to have to comply with that. Comply with what? Comply with the furniture placement? No. I'm sorry. Maybe I misspoke, but what I'm trying to say is comply with the direction. What was the direction? The direction was, Mr. Holden, I am telling you and directing you to close my blinds in my building every day and open them every morning. And if they're not done, I'm going to call you and I'm going to get upset about it. And Mr. Holden, the plaintiff, testified that if he didn't do it, he would even get calls, and Mr. Bob, this owner, would freak out with his words. Freak out about it. And he just was compelled to do it, and he was trying to do what the landlord required of him in the landlord's own building. Opening and closing blinds isn't inherently dangerous, is it? I've never really gotten hurt doing that. It's most certainly not inherently dangerous. Right. What's dangerous here is where the furniture was placed. I mean, that's the duty. The duty that you're looking at is the duty to place the furniture in a safe manner. Well, once the furniture is placed, it's placed as it is, so there's not a lot of direct testimony as to when it was placed or how it was placed. There is some testimony about that, and the plaintiff does talk about that in his testimony, that the plaintiff didn't do it and it was the landlord that did it through his daughter. But once the furniture is placed, now he's being directed to encounter the hazard of having to reach back behind. But you keep skipping over this part in the middle. Where is a prohibition of moving that credenza? Didn't your client just choose to climb up on it rather than move it? Or ask that it be completely removed from his office? Didn't he do this for five years? I agree. That's the testimony. That is correct. I don't think that says that the plaintiff then has no cause of action. That does raise the question of comparative fault. I'd agree with that. In fact, I argued at the trial court level, and I'm arguing here, that any statement that the plaintiff assumed the risk of going on to his own credenza to comply with his direction to close the blinds is an issue of comparative fault for the jury to consider. But it's not an issue of taking away any duty whatsoever because the plaintiff supposedly assumed the risk. I still respectfully think you're getting over the hump, which is if this was a difficulty, his option was simply to move the credenza. I don't think he had that option. I mean, it wasn't his decision to make. It's his office, right? I mean, where in the lease can we point to to say that there was any residual control over don't move that credenza? That's not in the lease. It's not stated. It's not clearly stated one way or the other in the lease about where the credenza is placed. You're telling me that the presumption in the absence of specific language is that you can't move anything in the rented space? I'm not saying there's a presumption one way or the other. I'm saying it's a question. It's unclear. There is no clear definitive statement. It's a question of fact. Would you expect a commercial lease to say you can't move the furniture? I mean, is that reasonable? I can't answer that question. Okay. Fair enough. I can only say that if that is a question, then the jury should answer that, whether it's reasonable or not. I can't answer what's reasonable in the scope of that question. I'm not qualified to. And that's part of my argument is that a lot of these questions that are unclear, juries are the ones who are supposed to make those decisions, and especially when it comes to the issue of agency. The issue of agency is a question of fact. I can state that definitively from a case specifically. But this is not the issue is not whether Bob said close the blinds. The issue is climbing on the credenza. In other words, if that were a window and I just walk up there and pull the blinds, there's no inherently dangerousness about that. But if there was a pile of furniture in front of it and I was climbing up on the table in two chairs, and you said I have to open and close that blind, but I can't move the chair, that's the issue to me. I understand what you're saying. I'm trying to state that there is no testimony in which the plaintiff or anybody said, Mr. Holden should have just moved that credenza. He had the authority to do that. Wouldn't it be plaintiff's burden to show that he was prevented from moving that? No. I don't see how the plaintiff would have that burden to prove he was prevented from doing something. His burden is to show that he had the duty to do something or was required to do something by the defendant who directed him to do it with the defendant's knowledge and understanding of the hazard. Now, the defendant, if they know the hazard, it's foreseeable to the defendant that the plaintiff has to step up onto this credenza and has done it multiple times and the defendant has seen him do it multiple times and it's a hazard and it's an awkward thing. The defendant, being the one who owns the furniture, who placed the furniture before the lease was even signed, had the authority obviously to move the furniture, but the defendant didn't do it either. So to say to put the burden on the lowest person on the totem pole here, which is an employee of a tenant of the building, to say the employee should have started moving his furniture around that was placed there before he even started working there, I think that's, again, missing the point as well. I think the burden should be on the person who placed the furniture there or caused it to be placed there, had the knowledge that the plant was, in fact, accessing the blinds in an unsafe manner because the defendant told them to do that, and has the ability and control, the defendant, to move the furniture any time the defendant wanted to. Why is the location of the furniture not deemed to be a condition and therefore does not relate to establishing approximate cause? Because the condition of the furniture, of course, it is a condition. The cause is the defendant causing him to encounter the hazard of getting up on the furniture, reaching back behind the desk with a stick to close the blinds. If the defendant had not ordered or directed the tenant, the plaintiff, the employee of the tenant, to do that, this would not have been a hazard or problem at all because he never would have had to encounter the problem. If Bob was not the CEO or owner or whatever of the company that the plaintiff worked for, it was just the landlord, that's all he was, what control does he have over Robert Holden to tell him to close the blinds? It's his building. He owns the building. So he could walk into that office and tell people they have to close their blinds? Yes. He owns that building. He is the landlord. And where does it say that in the lease? It doesn't. Maintaining control to that extent? I don't think the lease says that specifically. And I have to admit that the lease is kind of a boilerplate lease. It's a lease that Mr. Bob Holden gives to Bob Holden to sign. I mean, don't you, as a plaintiff in a fat pleading jurisdiction, have to plead some facts to show control? I think we have done that. In fact, in the testimony in the case, Mr. Holden himself testified that one of the defendant Wilson Management LLC's normal responsibilities was to, quote, was to make sure the blinds were accurately closed and nobody fooled around with the heat or air conditioning, quote. That's page C148. And the plaintiff, Mr. Holden, also testified that Bob, the owner of the building, quote, unquote, had called the plaintiff on many occasions to instruct him to make sure the, quote, effing blinds were closed, end quote. So this is the plaintiff's testimony. Is the testimony in the record? No. I think the jury can weigh that testimony, whether we like it or not. I think the jury can weigh that testimony. And that's what they should be allowed to do. Is there a question of fact as to whether or not the owner, when he told the plaintiff that the blinds had to be open in the morning and closed at night, was saying that to the plaintiff as the landlord? Or are the material facts established that that was stated as his employer, the plaintiff's employer? It's a blurred line. The quotes I just made from the plaintiff, the plaintiff himself testified that he was receiving. It can be a blurred line insofar as a legal status is concerned. Well, agency's legal status, what we're talking about is what entity was Bob acted on behalf of. Agency is a factual question. IPI 50.04 talks about that specifically. And even the trial court stated specifically. Well, if he was the landlord who said this, then why did your client file a workers' comp claim? Because apparently this was not within the scope of his employment. This was within the scope of complying with a lease or an order relative to a lease that I don't think you allege that he was, quote, unquote, an employee of the landlord. We did not allege he was an employee of the landlord. Definitely we did not. He was working, though, however, at the time of the occurrence. And therefore, he did file a workers' comp claim. And there was no argument in the workers' comp claim about this issue. So it's just really not an issue before the court. Factually, when we're talking about the blurred lines I just discussed, the trial court stated, quote, that's somewhat blurred lines. Were he acting as a landlord or was he acting in regard to his role as CRM? Well, if he was closing the curtains based upon the scope of his employment, doesn't that mean that as a matter of law and as a matter of fact that he was being told to do it in the scope of his employment and, therefore, he had to have been ordered to do this based upon his employer's orders, not the landlord's orders? I would certainly disagree with that. I would think the trial court did not and the jury would not have the issue of the workers' comp claim issued before them as a factual matter. It's not a question of the workers' comp claim. It's an issue of whether or not a fact, an elementary fact in the workmen's comp claim, established that it was in the scope of employment because it was the employer and not the landlord that told him that he was supposed to close the blinds. The only way I can rationalize a different conclusion is if supposedly your allegations were that the employer was also ordering him in a double status and also was ordering him pursuant to the lease, which Justice Berkus suggested it's questionable as to whether or not the landlord ordered him to do it, but at least your allegation would have to be that it was the landlord that was telling him to do it as well. Well, I think that's what we are. Well, we're certainly arguing that the landlord is telling him to do it, no question about that. And I agree that I guess you could argue that in front of the jury that the plaintiff could be cross-examined. Well, didn't you, I guess, file a workers' comp claim alleging that the employer told you to do this? Having taken a position in a workers' comp claim that it was the employer that ordered him to do the things that he was supposed to do, don't you think you might be collaterally estopped or estopped by judgment that would suggest that you can't make a different factual allegation, that it was done by a landlord instead of the employer? There's been no collateral estoppel issue briefed or ever raised, and the answer, I believe, is still no. Because in the workers' comp claim, there's not an issue of who gave the order. And the question is... It may not have been an issue because it wasn't in contention. It was uncontroverted. It was agreed to. It was stipulated that it was the employer who made the orders, which meant that unless, of course, his job description also requires him to go around and see to it that all blinds on the entire floor for that business are closed, I don't see why this wouldn't be a statement made by the employer to the employee or plaintiff that this is, in fact, in the scope of employment. Because the proper defense would have been I never told him to, quote-unquote, do this. In fact, I actually told him not to do it. I did it in my status as landlord. I ordered him as a landlord that I wanted him to do that. Now, there I could see where at least your positions would be consistent. I hear what you're arguing, but we're going beyond the record of this case. We're going way beyond the record of this case. We're not going beyond the record so much as we're going beyond the arguments raised. But I or the panel can affirm on any basis in fact or law. I understand. Your time is up, sir. Thank you. You'll have an opportunity to make rebuttal. Thank you. Ms. Hunstein or Hunstein? Hunstein. Ever watch Young Frankenstein? Yes. Yes. And I often say it's Hunstein like Frankenstein. Yes. Good morning, Your Honors, and may it please the Court. My name is Alexandra Hunstein, and I'm here on behalf of the sole defendant, Anna Pelley, Wilson Management, LLC. And we ask that you respectfully that you affirm the judgment of the trial court and its grant of summary judgment to the defendant. Is it a question of fact as to what hat Bob was wearing when he said close the blinds every night? No, because no legal relationship exists between – there's no duty, legal duty, that exists between Wilson Management, LLC, the only defendant here,  and the plaintiff, Robert Holden. There is just simply no legal relationship. In order for there to be any tortious conduct, there has to be duty and there has to be a breach. And there was no duty here between the two of them. Well, counsel for plaintiff was claiming that it's a question of fact as to whether or not the lease provided for a duty or some sort of control by the landlord. Is it your position that you will, in attempting to prove a negative fact, argue that there is nothing in the lease that could possibly be interpreted as such? I think the way that the plaintiff's counsel is characterizing it is it's not a question of fact. It's an absence of evidence. And it's the plaintiff's duty to raise a prima facie case that there was a relationship between those two entities. And as all of you pointed out during the previous arguments, there certainly were two hats that Bob was wearing. He was sometimes a landlord and he was sometimes an employer. But I think if you look at the record, it simply doesn't support the contention that Bob was doing anything but directing an employee if and when he told him to close the blinds. If you look at page 243 of the record, Bob was asked this question in his deposition, and I really think this gets to the crux of the issue. If you wanted Mr. Holden to move the location of his desk and you told him to do that, would he be required to follow your instructions? And the answer that Bob gave was, if I said you have no choice, yeah, or he would be fired. Not he would be his lease would be terminated. Not he would be removed as a tenant. Not he would be removed from the premises. He would have been fired if he didn't listen to Bob. And so the absence of evidence to us is not a question of fact. It's a question of law. But the trial court properly found there wasn't a prima facie showing of any duty between the two parties. And the plaintiff asserts that we had a duty to control because we are duty to arrange the furniture correctly. But in their brief, plaintiff miscites to a certain page in the record that says that Bob would and they claim that it supports the contention that Bob was the one who arranged the furniture. But as Your Honor pointed out, it was Diane Wilson who arranged the furniture. She didn't work for CRM. She didn't work for Wilson Management LLC. So Bob had his daughter arrange the furniture within the company where he was a CEO. But, again, there is nothing in the record, as Justice Jorgensen, you pointed out, that says he couldn't move the furniture, that he didn't have control over his own space. He was the vice president of the company. He certainly could have asked to have the furniture moved. And legally, under Illinois law, a lesser is not liable for injuries caused by a dangerous condition in the leasehold. So if Bob was wearing his landlord hat and he walked up to that particular unit, as soon as he crossed the threshold, he became the manager of CRM again. And the record reflects that the plaintiff was not in charge of closing the blinds for the whole building. He didn't have to go around to every single business on the floor. The record states specifically that he had to close four sets of blinds, which were all, quote, in his area. That's on page 154 of the record. He didn't have to close all the blinds in other businesses, just his own. And, in fact, he didn't have any trouble with three sets of blinds, just one. Was he told that he had to open the blinds in the morning? I believe there's dispute as to whether he was told to open or close them. But it sounds from the record like Bob wanted to control the heating and cooling of that particular unit by closing the blinds. Well, if we're talking about heating and cooling, the blinds would act as an insulator in any event. My point is that being the devious person that I am, if I was told that I had to close them every night, I might not open them in the morning. And then I wouldn't have to deal with closing them at night. So unless the employer told him that he had to both open and close, didn't he have the discretion to just leave them closed? It wasn't an order by the landlord? Certainly. Or control by the landlord? Certainly. And, again, if we look to what the plaintiff was afraid of in this case, he was afraid of, quote, flipping out. No one asked the follow-up question what flipping out meant, but we can perhaps infer from the record that he was afraid he would lose his job. But, again, even the motivation that he was afraid he would lose his job is a motivation based in employment and not based in losing his housing, for example. This isn't a residential lease where if he didn't listen to his landlord, he was worried about being evicted. It was a commercial lease. He was worried about his employer's disapproval. And that's exactly what's at issue here in terms of duty, and it was correctly identified by the trial court and this panel that duty simply doesn't exist between the two. All the facts in the record that are undisputed all support this contention that no duty exists. He said that he, and Plaintiff's Counsel pointed to a part in the record in the plaintiff's testimony, which is two lines, where he says, It was a duty of mine to Wilson Management LLC to close the blinds. That's the only contention in the record that supports any relationship between the two. Is there any evidence in the record that the landlord had a policy for every tenant in the building that every tenant in the building had to open any blinds or curtains or shades in the morning and close them at night? The only policies, no, to my knowledge, the only policies that exist from the landlord to the lessees are simply those that are stated at the end of the lease, which is on 641 of the record. There's like one through ten, and the only part of the lease that references any kind of blinds is subsection nine of that rule, those rules and regulations, and it talks about blinds on the outside of the building and what to do if a lessee wants those. And in this case, Bob was the lessor and the lessee. So again, we have to think about what hats he was wearing and what role he was playing when he told the plaintiff, did or did not tell the plaintiff to close the blinds. But going back to that quote that Plaintiff's Counsel used and raised as the only, again, the only support for the relationship between the two, after he was asked that question, he was followed up asking about his employment with CRM, and the plaintiff self-identified that he had no employment contract with Wilson Management LLC. There was nothing in writing saying that he had to complete those duties for Wilson Management LLC. He was never paid by Wilson Management LLC. He was paid by CRM, and that was his only employer here. So although he says that in his deposition, that doesn't raise a question of fact because still no legal relationship exists between the two parties. He also was not the one who was responsible for signing the lease for CRM. Again, that was Bob. And there's also evidence in the record that he was the one who was responsible for creating this condition. Plaintiff is identifying for the panel that the dangerous condition that existed was the way that the furniture was arranged in the room. But the standard for whether there's a dangerous condition that's open and obvious is a reasonable person's standard. So if a person were to walk in the room, they probably wouldn't say, wow, this desk is arranged in a very dangerous way. The dangerous condition is not the desk itself. It's not the blinds themselves. It's not the credenza itself. It's the fact that every day plaintiff undertook to stand on his desk, which admittedly in the record is crystal clear about this, he self-cluttered. He, like all of us, had food containers, bottles of water, papers arranged in a certain way on his desk. And he elected to stand on his cluttered desk and elected to use a broom to close the blinds. And he was a vice president of the company. That is the open and obvious danger, the procedure by which plaintiff undertook to close the blinds is what's open and obvious and dangerous. And a reasonable person would have known not to stand on a piece of furniture that wasn't meant to hold human weight. Plaintiff is also attempting, as Justice McLarity pointed out, to conflate Bob as the same person as Wilson Management LLC for the benefit of having Wilson Management LLC as a defendant.  Their employer wasn't added as a co-defendant. The only entity you have as a defendant before you is Wilson Management LLC. Not Bob Wilson as employer, not CRM as employer. And Bob, who seems deceased, is not personally involved in this suit at all, in fact. And the case law supports that liability cannot be interchanged simply because two places have one actor in common. And there's, so there's no inference that Bob's acting, excuse me, plaintiff says that there's an inference that Bob was acting on behalf of Wilson Management LLC. They cite to, I believe it's page 148 of the record, but there is no place on page 148 that says Bob was acting when he told the plaintiff to close the blinds on behalf of Wilson Management LLC. The conversation that happens on page 148 of the record is simply the plaintiff trying to clarify in his own deposition what the difference between Wilson Property Management and Wilson Management LLC is. And it was since resolved by a plaintiff's counsel in his brief by saying that the plaintiff was confused and thought that those were two separate entities when really the former did not exist. So there's nothing in the record that supports the contention that Bob was acting on behalf of Wilson Management LLC. And that's a legal question that can be resolved. The review here is de novo, and that's resolving any facts as they're applied to the law and presented as a legal question. The trial court got it exactly right on this particular issue, and I'd just like to highlight some of the things that the trial court said. On page 908 of the record, the trial court noted, I don't see any duty, any duty in any manner whatsoever that the building owner has to maintain the interior of this lease premises or to direct any employee of the tenant in that particular lease premises to do or not to do something one way or the other. There's nothing that shows the owner of the building was directing Holden to do something for the building. And on that basis, I find there's no genuine issue of material fact. There just are no facts before the court today. The plaintiff has not fulfilled his burden by raising any kind of evidence of a premonition or also showing that this corporate entity somehow had control of the leasehold. It did not. Legally, even if it's a boilerplate lease, boilerplate lease contains the language and confers the property interest right to the lessee. So if Bob was doing anything within that leasehold, he was acting as an employer. He didn't have a right to enter that particular space without working it out with the lessee, which admittedly was him, but he would still have to go in as an employee. Would his boss have ever told himself that he couldn't enter? That's doubtful. It's doubtful that he would have ever said that. And just to clarify, Your Honor, you mean would Bob ever tell Bob that he couldn't enter? Probably not. But the argument still holds because the leasehold exists, right? So if he's walking into the leasehold and he's directing someone who's inside to do something, that's him acting as an employer. The landlord would have really no recourse. So if you're looking for a reason that a person would do something if the landlord asked, that would be the motivation wouldn't really be there because the plaintiff only had an interest in not losing his employment. But again, there's no legal relationship, and it really comes back to that particular question. You never raised collateral estoppel under the workers' compensation, did you? We did not, no, Your Honor. Should you have? No, Your Honor, because, again, I don't think that the proper defendant is before you today. I don't think that the defendant, Wilson Management, LLC, has anything to hide here. There's just no relationship. It's an attempt by a plaintiff to conflate one person as being a corporate entity for the benefit of this suit. As all of your justices pointed out earlier, he already had a workers' compensation case, and he was already compensated accordingly. This is an attempt to conflate Bob's actions both as an employer and as a landlord, which he couldn't have been acting in both capacities. And I think particularly the quote that Bob gave where he says, I would fire Holden if he didn't do what I said, is a pretty indicative moment that illustrates their relationship and the manager and employee relationship that they have. Even if this Court did find that there's a duty and did agree with the plaintiff that some kind of duty exists, there's still no question of fact as to whether this was an open and obvious danger. In the example that Justice Jorgensen gave, if there was a blinds over there, it's not inherently dangerous. Counsel argues the deliberate exception, deliberate encounter exception. I know in your brief you countered that with a case that talks about having options available to you. But if, in fact, the landlord placed the furniture there and, I don't know, assuming there's some evidence that he couldn't move it or he thought he couldn't move it, doesn't that defeat your argument? No, it doesn't defeat our argument because even if there was evidence that he thought he couldn't move it, there's no definitive evidence that says that he couldn't. There was nothing preventing him. In fact, in his own deposition testimony in the record, he says he never asked. He never even tried. He never tried to rearrange his furniture. He never tried to move it. The record also reflects he was a vice president at CRM. This is not someone who is like a low, you know, a secretary somewhere who's beholden to someone. He's a vice president there, and he was in charge of operations at his company. He was in charge of HR. But the issue is he's beholden to Bob. I mean, and Bob's the one who told him to close the blinds. I mean, that's the issue. He is beholden to someone, and that is Bob. Yes. He's beholden to Bob, who is his employer. Thank you. Thank you. I think I have one more question. Yes. Would you agree that this case boils down to the movie What About Bob? Absolutely. Okay. Thank you. Thank you. Mr. Berman, you may proceed. Thank you, Your Honor. I think that the argument here just kind of brought forth even more questions than the fact that we've been discussing. The defense attorney argues that as soon as Bob crosses the threshold into the plaintiff's workspace, he becomes a CRM employer only and not a Lambert employer. That's a question of fact as well. I mean, that's not a question of law. This whole issue of agency that the trial court relied upon and stated very clearly in the ruling, he has decided that Bob was acting as CRM and the employer only. This is an issue of fact that I think a jury can determine. This is an inference that both facts can create a reasonable inference either direction that a jury can determine. I was going to try to read. The question of agency is not a legal conclusion. Rather, when there is some dispute as to the extent of the party's relationship, the existence and scope of agency relationship are questions of fact for the jury to determine. And I'm just quoting from a case called McHale v. W.D. Trutting. That's 2015 LAP 1st, 132625, paragraph 96. So the defense attorney also made the argument that agency is a question of law. But as here, I keep arguing and I keep trying to say that when you make that finding, that's a finding of fact.  It's not, Mr. Holden, it's not the plaintiff's job to be the company who... What is the relationship between Bob the owner-landlord and the plaintiff here? What's the relationship? There's a couple of different relationships. Number one, owner-employer-employee relationship. No, no, no. This is the question. What is the relationship between the owner of the building and plaintiff? The plaintiff is working in the owner's building. That's it? That's it. Okay. He's there in the owner's building. Just like if a landlord owns a building and a tenant is living in an apartment in that building and the landlord wants to come in and check the carpeting, or the landlord wants to come in and check the blinds, the landlord wants to come in and check the walls to make sure there's no damage, the landlord has a right to come in as a landlord. The landlord's not coming into that apartment. But that's the relationship. That is the relationship. Owner and tenant. Yes. Employee or tenant. Right to inspect and right to control are two totally different things. I mean, a landlord certainly would have a right to inspect, and that would be in the leasing. That's not an issue here. The issue is control of the operation of the premises, who opens and closes blinds, what's the thermostat set at, and things like that. And the testimony in this case from Mr. Holden himself is that Bob, as the landlord, gave him direction. That's an exercise of control. Whether it's in the lease or not, it's certainly an exercise. It's testimony. It's evidence that a jury could consider when determining this issue of agency, who gave that order. But if the landlord lacks any legal control over the premises, the agency argument is irrelevant. I don't think the agency argument would be irrelevant. If the landlord lacks any control over the premises. But still gave that same direction. That's my question. If the landlord, hypothetically, the landlord of an apartment building gives a direction to the tenant to make sure those blinds are closed every day, and the landlord, it's hard to make that same example, because in that case, that's a holy demise premises. This is not a holy demise premises. This is one floor of a building that there's multiple tenants on, and one of the people in that floor who has a desk is the defendant, both the manager and LLC. So, again, it's not a simple comparison. It is not clear and free from doubt. It is not a clear matter of law in this circumstance. The defendant argued that the defendant, mostly the manager and LLC, wanted to control the heating and cooling of the unit. A landlord would certainly want to control the heating and air conditioning and cooling of a unit by ordering the tenants, I want those blinds open and closed. But wouldn't that be in the lease? I mean, you're saying that, I'm glad I'm not a tenant, because you're saying that any owner can come into a building and say, no, I want you to close the blinds, I want to control the heat, I want to do this, even if it's not in the lease, and I'm obligated to do that. Well, if the lease doesn't say that the tenant, the owner, landlord, has no authority to do that, then it's an open question. And in this case, the owner and landlord did give those directions, and if it's not written in the lease that the owner has one way or the other, whether the owner has that authority or direction, well, then it's an open question. And I would, just to follow up, the lease here I think is pretty clear. It talks about awnings and shades over and outside the windows. And I'm arguing that that is not clear and free from doubt, that it's only outside the windows. It's also the shades over the windows. So, I mean, I think it's not clear and free from doubt. Any way you look at this, there's so many questions of fact that to make this summary judgment is certainly an error, and the jury should be elected. The motion for summary judgment that was granted by the trial court was a motion for summary judgment filed by the defendant seeking dismissal. And as such, the burden on the plaintiff, the respondent, was that you arguably had to establish facts that would sustain a judgment in your favor. So in a short synopsis, could you tell me what you believe that you could prove that would sustain a judgment? Sure. The defendant, landlord, through its agent, Bob, was aware of a potential unsafe condition that it caused in the setting up of the furniture and the placement of the blinds. It then directed one of its tenants to open and close those blinds. The plaintiff complied with that direction because he kind of felt like he was forced to, because if he didn't, he would get calls at night and be harassed. So he complied with those. In order to comply with those, no, he didn't move the desk, no. Could he have? Question of fact. Maybe he could have, maybe he couldn't have. That's certainly a question of fact. But in fact, he did comply with that direction by getting up on the desk and using that stick. The defendant, Bob, the person who gave him the direction, was clearly aware that the plaintiff was doing that task in an unsafe manner, pursuant to the defendant's direction and control, and made comments about it. There was eyewitness testimony that Bob saw him doing that and commented about it, despite Bob completely denying ever seeing that or being aware of it. Question of fact. And in complying with that direction, in countering the unsafe condition, he fell and was injured severely. And that's really been the bottom line of the case. Any other questions? Thank you. We'll take the case under advisement. There are other cases on the call. There will be a short recess.